## Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

**Brian P. Egan**
(302) 351-9454
began@morrisnichols.com

July 1, 2022

The Honorable Sherry R. Fallon                                    *VIA ELECTRONIC FILING*
United States District Court
  for the District of Delaware
844 North King Street
Wilmington, DE  19801

      Re:    *Rex Computing, Inc. v. Cerebras Systems Inc.*
               C.A. No. 21-525-MN-SRF (D. Del.)

Dear Judge Fallon:

      Cerebras's letter ("Ltr.") demonstrates that there is no live discovery dispute for the Court to resolve regarding Rex's infringement contentions, and its motion should therefore be denied. As Cerebras acknowledges, Rex has already agreed to supplement its infringement contentions. Ltr. at 2.  Rex is currently working on that supplement, and during the parties' June 16 meet-and-confer, Rex committed to serving it by July 15—that is, ***before*** the July 18 date that Cerebras now seeks.  Ltr. at 5.  The remainder of Cerebras's complaints amount to the unsupportable position that Rex must provide its final contentions now, during the middle of discovery, even though the deadline for final infringement contentions in the Scheduling Order is September 9, 2022. Cerebras's position cannot be right, particularly because it has only today (July 1) made a significant portion of its source code available for inspection for the first time, and because Judge Noreika ordered both sides to serve supplemental contentions addressing both parties' proposed claims constructions, ***including*** under the upcoming exchange of additional proposed constructions which will not occur ***until July 20***.  In other words, while Rex has agreed to provide a supplement by July 15, Rex (and Cerebras) will necessarily have to provide further supplementation after July 20.  Rex respectfully submits that there is no need for an order compelling supplementation where Rex has already agreed to do so.

      As Rex explained during the meet-and-confer process, it has not and will not hold back its infringement theories, only to disclose them at the last minute in the final contentions.  To the contrary, Rex's initial contentions included significant amounts of citation to documentary evidence (including source code) in support of its theories, as can be seen in Exhibit C to Cerebras's letter.  There is simply no comparison to situations where plaintiffs have provided barebones contentions, reciting little more than the claim language.  *See, e.g.*, *Kajeet, Inc. v. McAfee Corp.*, C.A. No. 21-5-MN, Nov. 22, 2021 Oral Order (D. Del. Nov. 22, 2021).  However,

The Honorable Sherry R. Fallon
July 1, 2022
Page 2

those contentions were, of course, Rex's *initial* contentions. *See* D. Del. Default ESI Standard at 4 n.3 ("As these disclosures are 'initial,' each party shall be permitted to supplement."). Importantly, Cerebras cannot disagree that the disputed meanings of multiple claim terms, and the Court's modification to the original claim construction process set forth in the Scheduling Order, have impacted both sides' timing for expanding upon the disclosures in their initial contentions.[1] On May 13, Judge Noreika postponed until the end of 2022 the claim construction hearing originally scheduled for May 20, and ordered both sides to exchange additional proposed constructions for certain disputed terms on July 20. Thus, it only recently became apparent that both sides will need to supplement contentions to account for competing proposed constructions, instead of waiting for the clarity provided by a claim construction order, which now will not be issued until *after* the deadlines for final contentions. In recognition of these changed procedural circumstances, during the meet-and-confer Rex proposed that the most reasonable approach would be to minimize the number of supplemental exchanges between now and final contentions in September, both for the sake of efficiency, and for accommodating the schedule of its technical expert who is assisting with analyses for contentions (Rex can only assume that Cerebras is also working with its expert during this process). But Cerebras was uninterested in engaging in such a proposal, and instead of discussing a series of reasonable deadlines for exchanging supplements, Cerebras demanded that Rex must provide its supplement in June (whereas now, Cerebras seeks July 18). And incredibly, Cerebras took the position that Rex's forthcoming supplement would be its *last opportunity* to add source code citations to its infringement contentions, even though final contentions are not due until September, and Cerebras had not yet produced all of the relevant source code.

Cerebras acknowledges that Rex agreed to supplement its contentions both "to provide contentions under the parties' alternative constructions of disputed terms and to provide substantive contentions regarding any infringement theories under the doctrine of equivalents." Ltr., at 3. But in an effort to manufacture a dispute where there is none, Cerebras goes on to claim that there are "two remaining disputes" where Rex allegedly did not agree to supplement: **(1)** "identifying specifically where Rex contends" certain limitations are met in the Accused Products, and **(2)** providing additional "source code citations." *Id.* at 3, 5. Cerebras's claim is simply incorrect, as Rex explicitly represented during the meet-and-confer process that its forthcoming supplement would address these two additional areas.

There are also multiple reasons why Cerebras's demands are inappropriate, and unsupported. First, Rex does not agree with Cerebras's characterization of the initial contentions as lacking sufficient specificity for the six claim limitations listed in the letter. Ltr., at 3-4. In at least some respects for each limitation, Cerebras merely disagrees with Rex's infringement theory. Of course, this is to be expected, but Rex does not understand how Cerebras's noninfringement

---

[1] As Rex noted in its opening letter, Cerebras also has not yet supplemented its initial invalidity contentions, which were served in January. And unlike Rex, which has already agreed to supplement by a date certain, Cerebras has refused to agree to a reciprocal time frame for its supplement. On the day before opening letters were due Rex asked Cerebras if it would agree to supplement its invalidity contentions by July 29. As of the filing of this response, Cerebras still has not responded to that proposal.

The Honorable Sherry R. Fallon
July 1, 2022
Page 3

positions can constitute a discovery dispute for ***contentions***, particularly with respect to ***initial*** contentions while discovery is ongoing. Rex agreed that its forthcoming supplement will include additional detail across the board, but Cerebras has no basis for attempting to compel Rex to modify or supplement its infringement theories so that they conform to ***Cerebras's*** view of the Accused Products, which is presumably a noninfringement perspective. Second, Cerebras fails to mention that the first three limitations ***are also disputed claim construction terms***. And the third limitation ("optimization module") is one where Judge Noreika ordered an additional exchange of proposed constructions, which will not occur ***until July 20***. In other words, Cerebras's complaints for these limitations cannot be separated from the claim construction issue. Rex already agreed that its forthcoming supplement will address its infringement theories under both parties' proposed constructions, but even so, ***further*** supplementation will still be necessary to account for a review of the source code that Cerebras only made available for inspection today, and the next exchange of proposed claim constructions, which will almost certainly reveal new noninfringement theories from Cerebras, for which Rex must develop responses.

Next, Cerebras inaccurately claims that Rex has not "committed to supplementing its contentions with source code citations." Ltr., at 4. That is incorrect, as Rex represented during the meet-and-confer that its forthcoming supplement ***will*** include additional source code citations (beyond those already included), ***where Rex determines that such citations are appropriate***. Indeed, Rex's technical expert recently conducted another review of the source code that Cerebras had made available as of Friday, June 24. However, during that review it became apparent that Cerebras had not included source code for a significant aspect of the Accused Products (the Graph Compiler).[2] Rex immediately notified Cerebras of this deficiency on Monday June 27, and on June 30 Cerebras acknowledged that the Graph Compiler source code was in fact missing, and would be made available for inspection for the first time beginning on July 1.[3] Because Rex's review of this newly-produced source code has not yet occurred, it is not possible for Rex to commit to addressing it in the forthcoming supplement by July 15, although Rex will address it in a future supplement. But apart from the issue of Cerebras's deficient production, its complaints about source code citations are unsupported for at least two reasons. First, there is no requirement for Rex to rely on source code evidence for every limitation of the Asserted Claims, as Cerebras seems to suggest. Ltr., at 4. Nor must Rex and Cerebras agree on which limitations receive source code citations, and which do not. For example, Cerebras demands that Rex supplement its contentions for claim element [1.7] with citations to source code. *Id.* Yet as can be seen in Rex's initial contentions, element [1.7] recites "each processor core is communicatively coupled with the

---

[2] Cerebras's argument that the Graph Compiler was "not identified as an accused product" is a red herring. Ltr., fn.1. The Graph Compiler is part of (and/or is used with) the accused Cerebras CS-1 and CS-2 systems, and its relevance is not as a separate accused product. Further, Cerebras's attempt to excuse its deficient production by suggesting that Rex "never indicated that such code was relevant or necessary" is belied by the multiple references to the Cerebras Graph Compiler ("CGC") as an infringing aspect of the Accused Products in Rex's initial infringement contentions, which Cerebras attached as an exhibit to its letter. *Id.*; Ex. C, at 40, 43, 44, 48.

[3] Rex's technical expert is scheduled to inspect Cerebras's source code again on July 1, including the newly-produced code for the Graph Compiler.

The Honorable Sherry R. Fallon
July 1, 2022
Page 4

other processor cores via the set of routers," which refers at least in part to physical components like a processor and routers, and the contentions cite to multiple Cerebras documents to show how the limitation is met in the Accused Products. Ex. C, at 23-25. For some claim limitations like this one, Rex may determine that no source code is necessary to show infringement (although Rex reserves all rights to supplement its initial contentions with additional source code citations), and Cerebras has no basis for demanding that Rex add source code citations for virtually every asserted claim limitation. Rex does intend to add source code citations in its forthcoming supplement, but Rex must be permitted to select the evidentiary disclosures for its own contentions.

Finally, Cerebras has no basis to demand that Rex's forthcoming supplement must "affirm[] that Rex does not intend to rely on source code evidence for that limitation," for any limitation where source code *is not yet cited*. Ltr., at 5. Essentially, Cerebras is asking the Court to order that Rex's next supplemental contentions are its final contentions. Cerebras has cited no caselaw supporting this position, nor could it, because the position makes no sense.[4] The Court sets a Scheduling Order for a reason, including providing the parties with an opportunity to produce and analyze discovery in an agreed-upon process. The Scheduling Order includes dates for the service of final contentions (both infringement and invalidity), and Cerebras cannot unilaterally advance Rex's deadline by multiple months. Moreover, Cerebras only made additional source code available for inspection starting *today*, and Cerebras well knows that the ongoing claim construction process will necessitate both additional analysis, and further disclosures of theories, *for both sides*. Cerebras has not explained (because it cannot) why source code should be treated any differently than other evidence, where both sides will be including additional citations, explanations, and evidence in upcoming supplemental contentions, including, as necessary, in the parties' final contentions, and where expert reports may further bolster those citations.

Accordingly, even for Cerebras's two manufactured disputes (more specific contentions, and additional source code citations), there is no live dispute at this time. Because Rex has already agreed to provide supplemental infringement contentions addressing both of these aspects, Rex respectfully requests that the Court deny Cerebras's motion.

Respectfully,

/s/ *Brian P. Egan*

Brian P. Egan (#6227)

BPE/bac
cc:   All Counsel of Record (via electronic mail)

---

[4] *Finjan* involved a motion to strike theories in an expert report that were allegedly not disclosed in contentions, and does not stand for the proposition that every asserted claim limitation must have source code cited in contentions, nor that a patentee must represent, at some point earlier than final contentions, that it will not cite source code for certain limitations. *Finjan, Inc. v. Rapid7, Inc.*, C.A. No. 18-1519-MN, 2020 WL 5798545, at *1 (D. Del. Sept. 29, 2020). None of Cerebras's other cited cases stand for those propositions either.