IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REX COMPUTING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-525-MN |
| | ) | |
| CEREBRAS SYSTEMS INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**[1]

At Wilmington this **15th** day of **April, 2024**, the court having considered the parties' discovery dispute letter submissions regarding plaintiff Rex Computing, Inc.'s ("Plaintiff") motion to strike and exclude undisclosed facts and opinions from defendant Cerebras Systems Inc.'s ("Defendant") rebuttal expert reports (D.I. 199; D.I. 200), IT IS ORDERED that Plaintiff's motion to strike is GRANTED-IN-PART for the following reasons.

1. **Background.** In this patent infringement case, Plaintiff alleges that Defendant infringes Plaintiff's asserted patents covering semiconductor technology that achieves reduced power consumption and removes unnecessary complexity from hardware. (D.I. 8 at ¶¶ 1-2, 5, 10) Presently before the court is Plaintiff's motion to strike certain portions of the rebuttal expert reports of Dr. Robert Colwell and Dr. Patrick Kennedy, Defendant's experts on non-infringement and damages, respectively. (D.I. 199, Exs. A, H) According to Plaintiff, these experts relied on new facts, documents, contentions, and discussions that were not disclosed

---

[1] In this district, motions to strike are treated as non-dispositive motions which may be resolved by the court pursuant to 28 U.S.C. § 636(b)(1)(A) and D. Del. LR 72.1(a)(2) where, as here, the ultimate decision is not dispositive of a party's claims. *See Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, C.A. No. 15-819-LPS-CJB, 2017 WL 11558096, at *1 n.1 (D. Del. Dec. 11, 2017).

during fact discovery, which closed on October 7, 2022. (*Id.* at 1; D.I. 74 at ¶ 6(a)) Plaintiff also moves to strike nineteen Bates-numbered documents that were produced on February 26, 2024 in conjunction with the service of rebuttal expert reports. (D.I. 189)

2. Expert discovery is in its final stage and will close on April 17, 2024. (D.I. 182; D.I. 189) Case dispositive motions are due May 10, 2024. (D.I. 182) A five-day jury trial is scheduled to begin on September 30, 2024. (*Id.*)

3. **Legal standard.** To determine whether the exclusion of evidence is warranted, the court weighs the *Pennypack* factors: (1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the evidence would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the evidence withheld. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), *overruled on other grounds*, *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985). "The determination of whether to exclude evidence is within the discretion of the district court." *TQ Delta*, 2021 WL 3728919, at *1 (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997)). "The exclusion of critical evidence is an extreme sanction;" therefore, a motion to strike should not be granted where an untimely or improper disclosure amounts to a "slight deviation from pre-trial notice requirements" or results in only "slight prejudice" to the movant. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (internal quotation marks and citations omitted).

4. **Analysis.** Plaintiff moves to strike four categories of documents and opinions cited in Defendant's rebuttal expert reports: (1) expert opinions on non-infringing alternatives; (2) expert opinions relying on conversations with Cerebras witnesses; (3) testing data generated in

connection with Defendant's expert analyses and expert opinions relying on that data; and (4) additional documents produced in connection with Defendant's rebuttal expert reports. The material subject to the motion to strike and the corresponding dispositions are set forth by category in the chart below:

|  | COLWELL'S REBUTTAL | KENNEDY'S REBUTTAL | DOCUMENTS | DISPOSITION |
|---|---|---|---|---|
| **Category 1** **Non-infringing alternatives** | D.I. 199, Ex. A at ¶¶ 251-73 | D.I. 199, Ex. H at ¶¶ 162-79, 271-74, Scheds. 1 & 2 | Engineering pay information: CRBR094056, CRBR094059, CRBR094061-66, CRBR094068-71 | GRANTED-IN-PART GRANTED as to D.I. 199, Ex. A at ¶¶ 270-72; Ex. H at ¶¶ 177-78, 274. DENIED in all other respects. |
| **Category 2** **Product testing for apportionment** | D.I. 199, Ex. A at ¶¶ 342-54 & Exs. B-1, B-2, & B-3 | D.I. 199, Ex. H at ¶¶ 138-46, Scheds. 3.6c, 3.7a, 3.7b | CRBR094053 (D.I. 200, Ex. 2 at ¶ 105 & n.207) | GRANTED |
| **Category 3** **Conversations with Defendant's fact witnesses** | N/A[2] | D.I. 199, Ex. H at ¶¶ 93, 100-01, 104-05, 111, 119-20, 127, 134, 239, 244, 254 | N/A | DENIED |
| **Category 4** **Additional documents** | N/A | N/A | R&D costs: CRBR094057, CRBR094070, CRBR094073  Unspecified: CRBR094053-55, CRBR094072, CRBR094074 | DENIED |

---

[2] Plaintiff's letter submission challenges Dr. Colwell's reliance on new conversations with Sean Lie and Mike Morrison. (D.I. 199 at 1) However, neither Plaintiff's proposed order nor its Appendix A identifies paragraphs in Dr. Colwell's rebuttal report that should be stricken specifically because they rely on conversations with these witnesses. (*Id.* at Proposed Order; Appendix A)

3

5. ***Category 1: Non-infringing alternatives.*** Plaintiff's motion to strike allegedly untimely evidence of non-infringing alternatives is GRANTED-IN-PART. Plaintiff moves to strike the portions of Dr. Colwell's rebuttal report addressing four allegedly non-infringing alternatives, arguing that they should be stricken "because they include extensive technical details constituting contentions that were not fully disclosed during fact discovery." (D.I. 199 at 1; Ex. A at ¶¶ 251-73) In October of 2022, Defendant served its response to Plaintiff's interrogatories identifying a list of hypothetical modifications to the accused products that would function as non-infringing alternatives. (D.I. 199, Ex. B at 6-7) Among the hypothetical modifications were: (1) removing the CE Injection mode, (2) modifying Tile IDs to not use physical addresses, (3) modifying the routers to use round robin priority scheme for configuration wavelets, and (4) modifying the accused products to remove square configurations. (*Id.*) These four hypothetical modifications are the same non-infringing alternatives addressed in Dr. Colwell's rebuttal report. (*Id.*, Ex. A at ¶¶ 251-73)

6. Plaintiff admits that Defendant disclosed the non-infringing alternatives described in Dr. Colwell's rebuttal report in a contention interrogatory response served during fact discovery. (D.I. 199 at 1) Moreover, Plaintiff's expert, Dr. Robert Horst, discussed each of the non-infringing alternatives disclosed in the interrogatory response at length in his opening expert report. (D.I. 200, Ex. 1 at ¶¶ 336-97) Defendant's timely disclosure of its non-infringing alternative theories during fact discovery renders this case distinguishable from the authorities cited by Plaintiff, where non-infringing alternative theories were disclosed for the first time in expert reports. *See Invacare Corp. v. Sunrise Med. (US) LLC*, C.A. No. 21-823-JPM, D.I. 160 (D. Del. Apr. 27, 2023) (striking evidence of a design around that was actually developed but not

disclosed prior to expert reports); *Natera, Inc. v. CareDx, Inc.*, C.A. No. 20-38-CFC-CJB, D.I. 392 (D. Del. Oct., 6, 2023) ("It is undoubtedly surprising and prejudicial when a party springs a new theory in the middle of expert discovery without any prior hint that it might do so.").

7. Plaintiff argues that Defendant's bullet-point interrogatory response lacks sufficient technical detail, which "prevented any investigation via timely produced documents or Cerebras fact witness testimony." (D.I. 199 at 1) But there is nothing in the record to suggest that Plaintiff timely objected to the sufficiency of Defendant's interrogatory response or affirmatively pursued document or deposition discovery pertaining to Defendant's list of hypothetical non-infringing alternatives. *See Silver State Intellectual Techs., Inc. v. Garmin Int'l, Inc.*, 2015 WL 2152658, at *7 (D. Nev. May 7, 2015) (denying motion *in limine* where the plaintiff failed to timely seek additional fact discovery for purposes of enabling its experts to address theories regarding non-infringing alternatives). With the exception of his reliance on late-disclosed testing data at ¶¶ 270-72 of his rebuttal report, discussed in more detail in the analysis of Category 2, *infra*, Dr. Colwell's opinion about non-infringing alternatives are not untimely, and there is no need to reach the *Pennypack* factors.

8. Even if the court were to consider Dr. Colwell's opinion on non-infringing alternatives untimely, Plaintiff has not shown sufficient prejudice or an inability to cure such prejudice under the *Pennypack* factors. As discussed, Plaintiff's own expert addressed the non-infringing alternatives discussed in Defendant's interrogatory response in his opening expert report. (D.I. 200, Ex. 1) Dr. Horst then had an opportunity to respond to Dr. Colwell's rebuttal report in his reply report. (*Id.*, Ex. 2) Plaintiff may also depose Dr. Colwell on his rebuttal report prior to the close of expert discovery on April 17, 2024. (D.I. 182) Any alleged deficiencies in Defendant's disclosure of its theories on non-infringing alternatives are therefore

harmless. *See Silver State*, 2015 WL 2152658, at *7 (concluding untimely disclosure of non-infringing alternatives was harmless where the plaintiff had an opportunity to depose the defendant's experts and submit an additional expert report of its own). Consequently, Plaintiff's motion to strike paragraphs 251 to 269 and 273 of Dr. Colwell's rebuttal report is DENIED.

9. Plaintiff's motion to strike is GRANTED to the extent that it pertains to paragraphs 270 to 272 of Dr. Colwell's rebuttal report, which rely on testing requested by Dr. Colwell after opening expert reports were served, and the corresponding paragraphs 177, 178, and 274 in Dr. Kennedy's rebuttal report. (D.I. 199, Ex. A at ¶¶ 270-72; Ex. H at ¶¶ 177-78, 274) The court's reasoning is set forth in the portion of this decision discussing Category 2 evidence pertaining to product testing, *infra*.

10. Plaintiff's motion to strike the remaining challenged portions of Dr. Patrick Kennedy's rebuttal report that discuss non-infringing alternatives is DENIED without prejudice. Dr. Kennedy's opinion regarding non-infringing alternatives relies on Dr. Colwell's rebuttal report. (D.I. 199, Ex. H at ¶¶ 162-76, 179, 271-73, Scheds. 1 & 2) As Defendant observes, Plaintiff does not provide an independent basis to exclude Dr. Kennedy's opinions on non-infringing alternatives beyond the fact that he relies on Dr. Colwell's technical analysis. (D.I. 200 at 2)

11. Dr. Kennedy's rebuttal report relies on engineering pay stubs that were not produced during fact discovery to support his calculation of the cost to implement the non-infringing alternatives, and Plaintiff seeks to strike those documents. (D.I. 199, Ex. H at ¶ 168 n.387) Plaintiff's proposed order confirms that these documents were produced on February 26, 2024 in conjunction with service of the rebuttal expert reports. Plaintiff has not identified any specific prejudice associated with the late disclosure of engineering pay stubs and, to the extent any

prejudice exists, Plaintiff had an opportunity to cure it in its reply expert reports and/or the April 12, 2024 deposition of Dr. Kennedy. (D.I. 201) Plaintiff's motion to strike CRBR094056, CRBR094059, CRBR094061-66, and CRBR094068-71 is therefore DENIED without prejudice.

12. To the extent that the rebuttal reports of Dr. Colwell and Dr. Kennedy rely on conversations with witnesses, Plaintiff's motion to strike that content is addressed at Category 3, *infra*. (*See, e.g.*, D.I. 199, Ex. H at ¶ 163, n.370)

13. ***Category 2: Product testing for apportionment.*** Plaintiff's motion to strike expert opinions and other allegedly late-disclosed evidence on apportionment is GRANTED. There is no dispute that Dr. Colwell's apportionment opinion relies on product testing data from tests run at Dr. Colwell's request on or around February 16, 2024. (D.I. 199, Ex. A at ¶ 346) Defendant contends that reliance on this late-disclosed testing data is justified because the tests were necessary to respond to Plaintiff's late-disclosed apportionment theory in its opening expert report. (D.I. 200 at 3) The record does not bear this out.

14. In October of 2021, Defendant served a contention interrogatory seeking Plaintiff's position on "how the value of or demand for the Accused Product is apportioned between features allegedly covered by the Asserted Claims . . . and the features not covered by the Asserted Claims, and identify all facts and Documents that support your contentions." (D.I. 200, Ex. 4 at 6-7) Plaintiff responded that it would rely on the entire market value rule and may, alternatively, apportion the value of the accused products by specific components or features. (*Id.*, Ex. 5 at 14-15) Plaintiff's response cited to documents it might rely on to support an apportionment analysis. (*Id.*, Ex. 5 at 15-16) Plaintiff adequately disclosed its intention to rely on an apportionment analysis during fact discovery, and Defendant was obligated to pursue

discovery on the subject accordingly.[3] Defendant's testing data created after opening expert reports were served is therefore untimely.

15. Defendant argues that the testing could not have been disclosed during fact discovery because it did not exist at that time. (D.I. 200 at 3-4) Defendant explains that the testing is not generated in the ordinary course of business, but instead uses data from routine functional testing and specifically extracts and collects the information requested by its expert from the routine tests. (*Id.*) Defendant does not explain why similar testing could not have been run during the fact discovery period, with the results produced to Plaintiff. Nor does Defendant cite any authority supporting its position that an expert may properly rely on such undisclosed data in a rebuttal expert report.

16. The *Pennypack* factors weigh in favor of granting Plaintiff's motion to strike the late-disclosed testing evidence. There is no dispute that Plaintiff's expert did not have the benefit of this testing when he drafted his opening expert report. Dr. Horst's reply expert report outlines the prejudice to Plaintiff from the belated disclosure of this testing data, including but not limited to the inability to ascertain how the data was generated, what the customer use cases are and who the customers are, and how the cases were determined to be "important." (D.I. 200, Ex. 2 at ¶ 140) There is no dispute that no historical data is available, and Plaintiff was not provided with underlying documentation or source code regarding the February 16, 2024 build of the Graph Compiler that was the subject of the recent testing. (*Id.*)

---

[3] Defendant argues that Plaintiff's subsequent 60-page technical apportionment analysis in its opening expert report was based on documents not cited in its interrogatory response and, in some cases, not produced in fact discovery. (D.I. 200 at 3) Defendant does not identify any specific examples of such documents, and the court has no way to verify the assertion on the record before it.

17. The deposition of Dr. Colwell is not likely to cure this prejudice because Dr. Colwell did not run the tests and collect the data himself—he directed Defendant's employees to do it. (D.I. 199, Ex. A at ¶ 346) As a result, a limited reopening of fact discovery, followed by a supplemental expert report by Dr. Horst, would be necessary to enable Dr. Horst to fully test Dr. Colwell's conclusions based on the new test data. With case dispositive motions due in less than a month, it is not feasible to cure the prejudice without disrupting the balance of the case schedule. (D.I. 182)

18. Finally, the test data is not of critical importance to Defendant's case on apportionment. Dr. Colwell's rebuttal report confirms that he was able to fully respond to the substance of Dr. Horst's apportionment analysis. (D.I. 199, Ex. A at ¶¶ 274-341) The part of Dr. Colwell's apportionment opinion based on the new testing data is minor by comparison.

19. Plaintiff's motion to strike the portions of Dr. Kennedy's rebuttal report that rely on Dr. Colwell's conclusions about the testing data is also GRANTED for the foregoing reasons.

20. **Category 3: *Conversations with witnesses*.** Plaintiff's motion to strike portions of Dr. Kennedy's rebuttal reports that rely on conversations with Defendant's fact witnesses is DENIED without prejudice.[4] (D.I. 199, Appendix A) There is no dispute that the witnesses were disclosed in Defendant's initial disclosures, and Plaintiff had an opportunity to depose them during fact discovery. (*Compare* D.I. 200, Ex. 3 at 2 *with* D.I. 199, Ex. H at ¶ 5)

21. Plaintiff identifies hearsay concerns based on the experts' summation of conversations with Cerebras employees. (D.I. 199 at 2-3) Plaintiff has not cited any authority supporting its position that a motion to strike is an appropriate vehicle to rule on admissibility

---

[4] To the extent that any of the conversations pertained to the challenged testing data, references to those conversations have already been stricken pursuant to the court's ruling on non-infringing alternatives and testing data on apportionment. *See* ¶¶ 5-19, *supra*.

9

under the Federal Rules of Evidence. *Cf. Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1375 (Fed. Cir. 2021) (determining on summary judgment that a source code printout was inadmissible, and summary judgment was warranted based on the lack of admissible evidence).

**22.** Plaintiff also cites to several alleged inconsistencies between fact witness testimony and subsequent conversations with the expert, and/or the testimony of one witness as compared to another. (D.I. 199 at 1-3) Again, Plaintiff cites no authority in which a motion to strike was granted to resolve alleged discrepancies in the statements of fact witnesses or 30(b)(6) designations.

**23.** *Category 4: Additional documents.* Plaintiff's motion to strike nineteen Bates-numbered documents that were produced in conjunction with the service of Defendant's rebuttal expert reports is GRANTED-IN-PART. The motion is GRANTED with respect to CRBR094053, which is cited in Dr. Horst's reply report and described in a footnote as a document relating to the new testing data. (D.I. 200, Ex. 2 at ¶ 105 & n.207) Consistent with the court's rulings striking all references to the new testing data from the record, this document should also be stricken.

**24.** The motion is DENIED without prejudice as it pertains to the eighteen remaining documents. Plaintiff does not provide a meaningful explanation of the documents' contents beyond a passing reference to R&D costs, nor does Plaintiff separately argue why it would suffer prejudice if the court does not strike them. (D.I. 199) Dr. Kennedy references three documents regarding research and development expenses in response to Mr. Pampinella's opinion regarding the relative bargaining power of the parties at the hypothetical negotiation. (D.I. 199, Ex. H at ¶¶ 168-71, 253-54) In the absence of any identified prejudice, the court finds that expert depositions are sufficient for Plaintiff to fairly address the documents.

25. With respect to several of the documents identified in Plaintiff's proposed order, the court was unable to locate any reference to the Bates numbers in any of the expert reports submitted: CRBR094053-55, CRBR094072, and CRBR094074. The court is not in a position to strike documents for which no description is offered, particularly when those documents do not appear to have been cited in either side's expert reports.

26. **Conclusion.** For the foregoing reasons, IT IS ORDERED that Plaintiff's motion to strike is GRANTED-IN-PART as follows:

|  | **COLWELL'S REBUTTAL** | **KENNEDY'S REBUTTAL** | **DOCUMENTS** | **DISPOSITION** |
|---|---|---|---|---|
| **Category 1** **Non-infringing alternatives** | D.I. 199, Ex. A at ¶¶ 251-73 | D.I. 199, Ex. H at ¶¶ 162-79, 271-74, Scheds. 1 & 2 | Engineering pay information: CRBR094056, CRBR094059, CRBR094061-66, CRBR094068-71 | GRANTED-IN-PART GRANTED as to D.I. 199, Ex. A at ¶¶ 270-72; Ex. H at ¶¶ 177-78, 274. DENIED in all other respects. |
| **Category 2** **Product testing for apportionment** | D.I. 199, Ex. A at ¶¶ 342-54 & Exs. B-1, B-2, & B-3 | D.I. 199, Ex. H at ¶¶ 138-46, Scheds. 3.6c, 3.7a, 3.7b | CRBR094053 (D.I. 200, Ex. 2 at ¶ 105 & n.207) | GRANTED |
| **Category 3** **Conversations with Defendant's fact witnesses** | N/A[5] | D.I. 199, Ex. H at ¶¶ 93, 100-01, 104-05, 111, 119-20, 127, 134, 239, 244, 254 | N/A | DENIED |
| **Category 4** | N/A | N/A | R&D costs: | DENIED |

---

[5] Plaintiff's letter submission challenges Dr. Colwell's reliance on new conversations with Sean Lie and Mike Morrison. (D.I. 199 at 1) Citations to these conversations appear within paragraphs of Dr. Colwell's rebuttal report that Plaintiff also seeks to strike on other grounds. (*See, e.g.*, D.I. 199, Ex. A at ¶ 253 n.182-83) Plaintiff's proposed order and Appendix A to its letter submission do not identify paragraphs in Dr. Colwell's rebuttal report that should be stricken solely because they rely on conversations with these witnesses. (*Id.* at Proposed Order; Appendix A) For the reasons discussed at ¶¶ 20-22, *supra*, regarding Dr. Kennedy's rebuttal report, citations to these conversations do not provide an independent basis to strike the paragraphs identified in Dr. Colwell's rebuttal report.

11

| Additional documents | | | CRBR094057, CRBR094070, CRBR094073<br><br>Unspecified: CRBR094053-55, CRBR094072, CRBR094074 | |

27. Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Order should be redacted, the parties shall jointly submit a proposed redacted version by no later than **April 22, 2023**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Memorandum Order issued.

28. This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to four (4) pages each.

**29.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge