Originally Filed:  May 10, 2024
Redacted Version Filed:  May 17, 2024

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REX COMPUTING, INC., | ) |
|         Plaintiff, | ) C.A. No. 21-525 (MN) |
| v. | ) JURY TRIAL DEMANDED |
| CEREBRAS SYSTEMS INC., | ) REDACTED - PUBLIC VERSION |
|         Defendant. | ) |

**OPENING BRIEF IN SUPPORT OF PLAINTIFF REX COMPUTING, INC'S MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 2

III. LEGAL STANDARDS ...................................................................................................... 3

IV. ARGUMENT ..................................................................................................................... 4

   A. There Is No Record Evidence That Any Named Inventor Had Actual Knowledge Of MIT 2002, Or Any Other Specific MIT Raw Reference  4

   B. There Is No Record Evidence That Any Inventor Knew That Adapteva's '943 Patent, Or Any Other Specific Adapteva Reference, Was Material To Patentability, Or Withheld Any Adapteva Reference From The PTO  7

   C. The Patent Office Already Considered MIT 2002, MIT 2003, MIT 2004, And Adapteva's '943 Patent During Cerebras's Failed IPR  11

V. CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                                          **Page(s)**

*1st Media, LLC v. Elec. Arts, Inc.*,
  694 F.3d 1367 (Fed. Cir. 2012) .......................................................................................... 10

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................................. 3

*Cal. Inst. Of Tech. v. Broadcom Ltd.*,
  25 F.4th 976 (Fed. Cir. 2022) ...................................................................................... 11, 12

*Cal. Inst. Of Tech. v. Broadcom Ltd.*,
  No. 16-cv-3714, 2019 WL 8807748 (C.D. Cal. July 1, 2019) ................................................ 12

*Carpenter Tech. Corp. v. Allegheny Techs. Inc.*,
  No. 08-cv-2907, 2013 WL 2250121 (E.D. Pa. May 22, 2013) ........................................... 7, 10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................................. 3

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prod., LLC*,
  No. 1:09-cv-1685, 2012 WL 529827 (M.D. Pa. Feb. 17, 2012) ......................................... 4, 11

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ............................................................................................................. 3

*St. Clair Intellectual Property Consultants, Inc. v. Acer, Inc.*,
  961 F.Supp.2d 610 (D. Del. 2013) ................................................................................... 4, 11

*Targus Intern. LLC v. Victorinox Swiss Army, Inc.*,
  No. 1:20-CV-00464 (D.I. 283) (D. Del. Mar. 27, 2023) ........................................................ 9

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) ..................................................................................... *passim*

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
  2013 WL 6118447 (D. Del. Nov. 20, 2013), aff'd, 597 F. App'x 630 (Fed. Cir. 2015) ......... 10

I.      INTRODUCTION

Plaintiff Rex Computing, Inc. ("Rex") respectfully requests summary judgment of no inequitable conduct, which Defendant Cerebras Systems Inc. ("Cerebras") asserts based on the allegation that Rex "deliberately withheld material information from the PTO" during prosecution of U.S. Patent No. 10,355,975 (the "'975 Patent"). D.I. 140 at 11-13. With discovery closed, it is clear that Cerebras failed to elicit any evidence sufficient to demonstrate that anyone associated with the prosecution of the '975 Patent had knowledge of information material to patentability of the '975 Patent, let alone withheld such information from the Patent Office ("PTO") with the specific intent to deceive, for the two sets of references Cerebras contends were withheld: (1) MIT Raw; and (2) Adapteva Epiphany. SOF, ¶ 1-5.[1] Accordingly, there is no record evidence that a reasonable factfinder could use to find inequitable conduct by clear and convincing evidence.

First, for the MIT Raw set, Cerebras's expert only provided opinions on the materiality requirement of inequitable conduct for one reference: MIT 2002 (*i.e.*, Cerebras has effectively withdrawn its claims for all other MIT Raw references). Yet, there is no record evidence that anyone associated with the prosecution of the '975 Patent even had knowledge of MIT 2002, let alone knew of its alleged materiality to the patentability of the '975 Patent. SOF, ¶¶ 26, 34. As a consequence, there also is no record evidence that anyone withheld MIT 2002 from the PTO. The same is true for every other MIT Raw reference that was not analyzed by Cerebras's expert. *Id.*

Second, for the Adapteva Epiphany set, summary judgment of no inequitable conduct is also appropriate. As an initial matter, Cerebras has effectively withdrawn its inequitable conduct allegations for all of the Adapteva Epiphany references, because Cerebras did not disclose any expert opinions to demonstrate any such reference's alleged materiality. SOF, ¶ 34. Moreover,

---

[1] "SOF" refers to Rex's Concise Statement of Facts, filed concurrently with this motion.

for all the Adapteva Epiphany references, there is no record evidence that anyone associated with the prosecution of the '975 Patent knew of their materiality to patentability, or made a decision to withhold them from the PTO, let alone any evidence supporting a specific intent to deceive the PTO as "the single most reasonable inference" to be drawn. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc); SOF, ¶¶ 12, 14, 15, 23.

Finally, the Court need not even reach Cerebras's failure of proof for MIT 2002, MIT 2003, MIT 2004, and Adapteva's '943 Patent, because after Cerebras pled inequitable conduct, the PTO considered these references in Cerebras's failed IPR, which found no claims of the '975 Patent unpatentable. SOF, ¶ 33. Thus, because these references have in fact been considered and rejected by the PTO, Cerebras cannot establish that any of them would have been but-for material to patentability. Accordingly, Rex is entitled to summary judgment of no inequitable conduct.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

On April 13, 2021, Rex brought suit against Cerebras for infringement of the '975 Patent, U.S. Patent No. 10,700,968 ("'968 Patent"), and U.S. Patent No. 10,127,043 ("'043 Patent"). D.I. 1. On December 12, 2021, Rex withdrew its claims for the '968 and '043 Patents, and maintained its infringement claims for the '975 Patent. D.I. 36; *see also* May 20, 2022 Minute Entry (dismissing the '968 and '043 Patents without prejudice). On October 11, 2022, Cerebras amended its answer to add an inequitable conduct affirmative defense and counterclaim ("Counterclaim") (D.I. 140 at 11-22), alleging that "[t]he named inventors and/or prosecution counsel deliberately withheld material information in applying for the '975 patent." *Id.*, ¶ 39. On January 23, 2023, the Court stayed this action pending *inter partes* review of the '975 Patent at the Patent Trial and Appeal Board (the "PTAB"). D.I. 175. On October 11, 2023, the PTAB issued a final written

2

decision finding no claims of the '975 Patent unpatentable. Ex. 12;[2] SOF, ¶ 33. On November 7, 2023, the Court lifted the stay. D.I. 183. Fact discovery closed on October 7, 2022, expert discovery closed on April 17, 2024, and trial is scheduled for September 30, 2024. D.I. 180.

### III. LEGAL STANDARDS

Summary judgment must be granted when there are no genuine issues of material fact, entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). Rule 56(a) "mandates the entry of summary judgment" "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Once the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a *genuine issue* for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis original). But "the [nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. Instead, a nonmovant's assertion that a fact is genuinely disputed must be supported by record evidence, "such that a reasonable [factfinder] could return a verdict for the nonmoving party," and the "mere existence of *some* alleged factual dispute between the parties" will not suffice. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis original).

The "party alleging inequitable conduct bears the burden of proof . . . by clear and convincing evidence." *Therasense, Inc.*, 649 F.3d at 1291. To prevail, "the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO." *Id.* at 1287. "The materiality required to establish inequitable conduct is but-

---

[2] Exhibit citations are to the Declaration of Jonathan Swisher, filed concurrently with this motion.

for materiality," and "prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* at 1291. To prove specific intent, "the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id.* at 1290.

IV. **ARGUMENT**

    A. **There Is No Record Evidence That Any Named Inventor Had Actual Knowledge Of MIT 2002, Or Any Other Specific MIT Raw Reference**

Cerebras cannot prove a specific intent to deceive for the MIT Raw category of references (SOF, ¶¶ 4-5, 25), because there is no record evidence that anyone associated with the prosecution of the '975 Patent had knowledge of MIT 2002, or any other MIT Raw reference. SOF, ¶ 26.

The governing law is clear: to prove a specific intent to deceive the PTO, "the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Therasense, Inc.*, 649 F.3d at 1290. The specific intent requirement cannot be met where, as here, there is no record evidence that anyone knew of a specific reference in the first place, and summary judgment must be granted in such instances because there "is insufficient evidence from which a reasonable factfinder could conclude" that anyone had a specific intent to deceive. *St. Clair Intellectual Property Consultants, Inc. v. Acer, Inc.*, 961 F.Supp.2d 610, 618-19 (D. Del. 2013) (granting summary judgment of no inequitable conduct where the accused infringer "fail[ed] to point to any evidence" that the named inventor, or any prosecution attorney, "was aware of the" allegedly withheld reference); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prod., LLC*, No. 1:09-cv-1685, 2012 WL 529827, at *3 (M.D. Pa. Feb. 17, 2012) (granting summary judgment of no inequitable conduct in part because of "the dearth of evidence" that either named inventor "knew

4

of the [reference], or knew that it was material, or deliberately withheld information," where the challenger "had the opportunity to depose each of these witnesses").

Critically, MIT 2002 is the ***only*** allegedly withheld reference for which Cerebras has disclosed an expert opinion in support of its burden to prove the materiality requirement of inequitable conduct. In other words, MIT 2002 is the only reference that Cerebras appears to advance for its inequitable conduct defense. SOF, ¶ 34. But there is no reason to reach the materiality requirement, because there is no evidence that the relevant inventors—Mr. Sohmers, Mr. Sebexen, or Mr. Cote—ever had any knowledge of MIT 2002 in the first place.[3] SOF, ¶ 26. Without such knowledge of the specific content of the MIT 2002 reference, Cerebras is unable to demonstrate that any of these named inventors knew of the reference's materiality to the patentability of the '975 Patent, let alone made a deliberate decision to withhold it from the PTO.

Cerebras's failure to elicit any evidence demonstrating a specific intent to deceive is absolute. First, no copy of MIT 2002 was found in Rex's files, or in the possession of any named inventor. SOF, ¶ 27. Second, Cerebras's Contentions do not identify any reference to MIT 2002 in any Rex document produced during discovery. SOF, ¶ 28. Third, Cerebras deposed all the named inventors, but none of them testified to having knowledge of MIT 2002. SOF, ¶ 29. Indeed, during these depositions, Cerebras never mentioned MIT 2002 a single time, let alone presented MIT 2002 as an exhibit or asked any questions about the reference. SOF, ¶ 29. To be sure, the deposition transcripts of Mr. Sohmers, Mr. Sebexen, and Mr. Cote further confirm that Cerebras has no record evidence to establish knowledge of MIT 2002. Mr. Sohmers testified that, while he was generally aware of the MIT Raw architecture because "it was something that I had come across

---

[3] Cerebras limited its Contentions to these three (of five) named inventors (SOF, ¶¶ 7-9), and did not ask the other two inventors about any allegedly withheld references. SOF, ¶¶ 24, 29.

5

just in my general understanding and research" and was a "famous academic architecture," when asked if he could "recall" any specific papers he "may have seen before," Mr. Sohmers testified "[n]o ones in particular," and "I don't remember specific paper names right off the top of my head." Ex. 10, 294:18-296:1. And while Mr. Sebexen testified, "I'm sure I was either aware [the MIT Raw architecture] existed or I would have looked it up," he explained, "I don't know to what extent I knew details about the architecture." Ex. 14, 192:11-18. And finally, while Mr. Cote generically testified that "I recall reading a paper on MIT Raw when I was in grad school," he did not testify to knowledge of any specific paper, including MIT 2002. Ex. 15, 98:1-6, 108:22-112:7.

While the foregoing specifically addresses the lack of record evidence for MIT 2002, the same is true for every other MIT Raw reference identified by Cerebras in its Contentions, including MIT 2001, MIT 2003, and MIT 2004. There is no record evidence that any named inventor had possession or knowledge of any of these references, and Cerebras did not ask any named inventor about any of these references, or their contents. SOF, ¶¶ 26-29.

Without knowledge of any specific MIT Raw reference, it follows that there is also no record evidence that any named inventor knew of a specific reference's alleged materiality to the patentability of the '975 Patent. Nor could there be any evidence of a deliberate decision to withhold such references from the PTO, as confirmed by Cerebras's wholesale failure to cite any such evidence in its Contentions. In fact, the inventors testified they would have provided any known prior art to prosecution counsel, or were not involved in determining which references prosecution counsel disclosed to the PTO.[4] Thus, even if there was any evidence that the inventors

---

[4] Mr. Sohmers testified that "anything that I felt by my understanding constituted prior art . . . I would have provided to – to counsel." Ex. 10, 285:18-286:4. Mr. Sebexen testified that "it was, like, a collaborative process, so, like, if our counsel were to ask us for something, we would have assisted." Ex. 14, 191:3-13. And Mr. Cote testified that "I didn't participate in those conversations" regarding giving prior art "to the patent office." Ex. 15, 109:16:24.

6

chose not to disclose information to the PTO (and there is not), there is certainly **no record evidence** of a "deliberate action to withhold [prior art] *in order to deceive the examiner*." *Carpenter Tech. Corp. v. Allegheny Techs. Inc.*, No. 08-cv-2907, 2013 WL 2250121, at *6 (E.D. Pa. May 22, 2013) (granting summary judgment of no inequitable conduct) (emphasis original, citations omitted). Accordingly, Rex is entitled to summary judgment of no inequitable conduct.[5]

### B. There Is No Record Evidence That Any Inventor Knew That Adapteva's '943 Patent, Or Any Other Specific Adapteva Reference, Was Material To Patentability, Or Withheld Any Adapteva Reference From The PTO

Cerebras also cannot prove a specific intent to deceive for the Adapteva Epiphany category of references (SOF, ¶¶ 2-3, 10, 13), because there is no record evidence that anyone associated with the prosecution of the '975 Patent knew of these references' alleged materiality to the patentability of the '975 Patent, let alone deliberately withheld them from the PTO. SOF, ¶ 23.

As an initial and dispositive matter, Cerebras would not be able to prove the materiality requirement of inequitable conduct for any of the Adapteva Epiphany references, because Cerebras failed to disclose any expert opinions for demonstrating their alleged materiality. *See* Fed. R. Civ. P. 26(a)(2)(B); SOF, ¶ 34. To prove that allegedly withheld information was "but-for" material, Cerebras must show that "the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Therasense, Inc.*, 649 F.3d at 1291. But Cerebras made no attempt to develop an evidentiary record for proving but-for materiality at trial. Instead, Cerebras only has

---

[5] While it is unnecessary to reach this final requirement, there is also no record evidence from which a factfinder could reasonably conclude that a specific intent to deceive is "the single most reasonable inference able to be drawn from the evidence." *Therasense, Inc.*, 649 F.3d at 1290. Cerebras's Contentions advanced only one theory for this requirement, namely that at the time the '975 Patent was filed, "Rex only had enough money to fund its operations for roughly a year and a half," and therefore allegedly "had a financial incentive to deceive the PTO" so that it could "acquire patents or other IP to demonstrate value before raising additional money." Ex. 1 at 20-21. Notably, however, Cerebras only cites "[u]pon information and belief" as support. *Id.* Cerebras never elicited any facts during discovery to support this theory, and therefore even if the Court reached the issue, there is no record evidence to support by clear and convincing evidence that a specific intent to deceive the PTO is "the single most reasonable inference able to be drawn."

7

its Contentions, which (1) recite attorney argument that Adapteva's '943 Patent supposedly discloses certain aspects of the '975 Patent, and (2) point to Cerebras's invalidity claim charts and IPR petition—***none of which is admissible evidence***. Ex. 1 at 18-19. Without any expert opinions (or any other admissible supporting evidence), there is no information that a reasonable factfinder could use to find that Cerebras met its burden of establishing the materiality of any Adapteva Epiphany reference by clear and convincing evidence. *Therasense, Inc.*, 649 F.3d at 1291 (holding that "in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference").

Setting aside this fatal deficiency regarding materiality, 

SOF, ¶¶ 18-20. But Cerebras's inequitable conduct claims based on that patent still fall far short of surviving summary judgment, because there is no record evidence to show that any inventor knew that this Adapteva patent was ***material to patentability*** of the '975 Patent, let alone that any inventor deliberately withheld this reference from the PTO. SOF, ¶ 23.

First, none of the named inventors testified as to ever having reviewed Adapteva's '943 Patent at any level of detail. SOF, ¶ 24. In fact, Mr. Sohmers testified that he "never looked at any patents from Adapteva." Ex. 10, 293:20-21. And while Mr. Cote testified that

---

[6] Cerebras's Contentions also refer to two documents that Cerebras contends "relat[e] to the Adapteva Epiphany architecture," and were "produced, from Mr. Sohmers' files." SOF, ¶ 10. (SOF, ¶ 11), and Cerebras did not take any discovery on these documents, let alone elicit evidence to prove that they disclose Adapteva information, or any information material to the prosecution of the '975 Patent. Further, Cerebras did not question Mr. Sohmers about either document, and thus has no record evidence to prove that Mr. Sohmers (or anyone else) knew of their alleged materiality to patentability, or deliberately withheld them from the PTO. SOF, ¶ 12.

8

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████ Ex. 15, 108:12-17; SOF, ¶ 22. ███████

██████████████████████████████████████████████████████████

████████████████████████████ Ex. 14, 186:14-25.  This testimony, which at best shows circumstantial awareness of Adapteva's '943 Patent, critically fails to demonstrate any knowledge that Adapteva's '943 Patent was material to patentability, or that anyone withheld it from the PTO.

Second, this lack of any close attention to Adapteva's '943 Patent actually underscores Cerebras's failure to develop any evidence to prove its claim.  Indeed, Cerebras's Contentions are predicated on an incorrect theory ████████████████████████████████████ ██████████████████████████ Ex. 1 at 15; SOF, ¶ 22. ████████████████████ ██████████████████████████████████████████████████████████ Ex. 9; SOF, ¶ 22. ████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████ Cerebras did not introduce Adapteva's '943 Patent into the record during any depositions, or ask any inventor questions about the ***content*** of that patent, let alone ask how its content compared to the '975 Patent.  SOF, ¶ 24.  There is simply no record evidence to support knowledge of materiality of Adapteva's '943 Patent to the patentability of the '975 Patent, which, on that basis alone, warrants summary judgment.  Ex. 16, *Targus Intern. LLC v. Victorinox Swiss Army, Inc.*, No. 1:20-CV-00464 (D.I. 283) at 43 (D. Del. Mar. 27, 2023)

9

(granting summary judgment of no inequitable conduct "[i]n light of the absence of any evidence that the named inventors viewed the [prior art references] as material to patentability").

And third, there is no record evidence that any named inventor made a deliberate decision to withhold Adapteva's '943 Patent from the PTO, let alone had a deceptive intent to allegedly do so. To the contrary, Mr. Sohmers testified that "anything that I felt by my understanding constituted prior art . . . I would have provided to – to counsel." Ex. 10, 285:18-286:4. Mr. Sebexen testified that "it was, like, a collaborative process, so, like, if our counsel were to ask us for something, we would have assisted." Ex. 14, 191:3-13. And Mr. Cote testified that "I didn't participate in those conversations" regarding giving prior art "to the patent office." Ex. 15, 109:16:24. Even if there were any evidence to demonstrate "knowledge of [this] reference's materiality" (and there is not), such knowledge "cannot by itself prove, let alone clearly and convincingly prove, that any subsequent non-disclosure was based on a deliberate decision." *1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1375 (Fed. Cir. 2012). Indeed, the specific intent requirement cannot be satisfied where, as here, there is "no evidence of any deliberate decision to deceive" the PTO by withholding a reference. *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 2013 WL 6118447, at *9 (D. Del. Nov. 20, 2013), aff'd, 597 F. App'x 630 (Fed. Cir. 2015) (denying post-trial motion seeking an order of unenforceability due to inequitable conduct). Accordingly, because Cerebras has no record evidence that could be used to prove a "deliberate action to withhold prior art *in order to deceive the examiner*," summary judgment is appropriate. *Carpenter Tech. Corp.*, 2013 WL 2250121 at *6 (emphasis original).[7]

---

[7] For the same reasons discussed for MIT Raw, there is also no record evidence from which a factfinder could reasonably conclude that a specific intent to deceive is "the single most reasonable inference able to be drawn from the evidence." *Therasense, Inc.*, 649 F.3d at 1290. *Supra*, at n.5.

Finally, for the other Adapteva Epiphany references (*i.e.*, Olofsson, Varghese, Epiphany Architecture Reference, and E64G401 Epiphany 64-Core Microprocessor Datasheet; SOF, ¶¶ 2, 13), the record evidence is similarly lacking. Cerebras elicited no evidence that anyone associated with the prosecution of the '975 Patent ever had knowledge of any of these references. Again, no copies were found in Rex's files or in the possession of the named inventors, and Cerebras did not identify any mention of them in any Rex document. SOF, ¶¶ 16-17. And critically, none of the named inventors testified to any knowledge of these references, which Cerebras did not even ask about in their depositions. SOF, ¶ 24. Thus, it follows that Cerebras cannot prove that any of the inventors knew these other Adapteva Epiphany references were material to the patentability of the '975 Patent, or made a deliberate decision to withhold them from the PTO, which warrants summary judgment. *St. Clair*, 961 F.Supp.2d at 618; *Kimberly-Clark*, 2012 WL 529827 at *3.

### C. The Patent Office Already Considered MIT 2002, MIT 2003, MIT 2004, And Adapteva's '943 Patent During Cerebras's Failed IPR

While summary judgment is warranted for the reasons discussed above, it is also not necessary for the Court to reach Cerebras's claims for MIT 2002, MIT 2003, MIT 2004, and the Adapteva '943 Patent, because in the time since Cerebras added its inequitable conduct counterclaim, the PTO has explicitly considered these references in Cerebras's failed IPR, which found that none of these references rendered any claim of the '975 Patent unpatentable. Ex. 12 at 43; SOF, ¶ 33. Accordingly, Cerebras cannot show that any of these references would have been but-for material to patentability *if* the PTO had considered them (as required under *Therasense*), because the PTO **has now considered them**. *Cal. Inst. Of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 991-92 (Fed. Cir. 2022) (affirming summary judgment of no inequitable conduct, because "references the PTAB considered in IPR proceedings upholding the patents' validity" cannot thereafter be "shown to be but-for material to patentability").

11

Further, the Federal Circuit affirmed that a challenger cannot advance at trial any inequitable conduct theories that it failed to disclose during fact discovery. *Cal. Inst. Of Tech.*, 25 F.4th at 992. And here, the inequitable conduct theories disclosed in Cerebras's Contentions for MIT 2002, MIT 2003, MIT 2004, and the Adapteva '943 Patent, are precisely the ones that the PTO rejected in the failed IPR. That is because Cerebras's Contentions only disclosed the theory that these references would have been but-for material to patentability of the '975 Patent ***for the reasons set forth*** in its then-pending IPR petition (and invalidity contentions, which are co-extensive with the IPR petition for these references). Ex. 1 at 19, 21; SOF, ¶ 32.[8] Now that the IPR has completed, with the PTO finding no claims of the '975 Patent unpatentable under Cerebras's timely disclosed theories, the Court may easily dispatch of MIT 2002, MIT 2003, MIT 2004, and the Adapteva '943 Patent, and grant summary judgment of no inequitable conduct, because these references have been rejected by the PTO and could not have been but-for material. *Cal. Inst. Of Tech. v. Broadcom Ltd.*, No. 16-cv-3714, 2019 WL 8807748, at *8 (C.D. Cal. July 1, 2019) (granting summary judgment of no inequitable conduct for references used in an IPR, and a cumulative reference, because the PTAB found no claims unpatentable, meaning that "as a matter of law," those references "were not but-for material to the patentability of the asserted claims").

V.   **CONCLUSION**

For the reasons above, Rex is entitled to summary judgment of no inequitable conduct.

---

[8] In his report, Cerebras's expert Dr. Colwell introduced a new inequitable conduct theory for MIT 2002, opining that it allegedly would have been but-for material to patentability if the examiner had considered MIT 2002 in a combination that included U.S. Patent Pub. No. 2013/0070588 ("Steele"), during prosecution of the '975 Patent. *E.g.*, Ex. 13, ¶ 118. However, as noted by Dr. Colwell, the PTAB did not consider any combination with Steele, because Cerebras did not include any such combination in its IPR petition. *Id.* Likewise, Cerebras did not disclose a combination with MIT 2002 and Steele in it inequitable conduct Contentions, which only point to the theories in Cerebras's IPR petition (and invalidity contentions, which were co-extensive with it). Ex. 1 at 19, 21; SOF, ¶ 32. Accordingly, Cerebras cannot now advance Dr. Colwell's new inequitable conduct theory at trial, and the Court should ignore it. *Cal. Inst. Of Tech.*, 25 F.4th at 992.

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | |
| | */s/ Brian P. Egan* |
| | _____ |
| OF COUNSEL: | Brian P. Egan (#6227) |
| | Anthony D. Raucci (#5948) |
| Michael A. Berta | 1201 North Market Street |
| Ryan J. Casamiquela | P.O. Box 1347 |
| Jonathan Swisher | Wilmington, DE  19899 |
| ARNOLD & PORTER KAYE SCHOLER LLP | (302) 658-9200 |
| Three Embarcadero Center, 10th Floor | began@morrisnichols.com |
| San Francisco, CA  94111-4024 | araucci@morrisnichols.com |
| (415) 471-3100 | |
| | *Attorneys for Plaintiff Rex Computing, Inc.* |
| Nicholas Lee | |
| ARNOLD & PORTER KAYE SCHOLER LLP | |
| 777 South Figueroa Street, 44th Floor | |
| Los Angeles, CA  90017-5844 | |
| (213) 243-4000 | |
| | |
| Nicholas M. Nyemah | |
| ARNOLD & PORTER KAYE SCHOLER LLP | |
| 601 Massachusetts Avenue, NW | |
| Washington, DC  20001-3743 | |
| (202) 942-5000 | |
| | |
| Mark Samartino | |
| ARNOLD & PORTER KAYE SCHOLER LLP | |
| 70 West Madison Street Suite 4200 | |
| Chicago, IL  60602-4231 | |
| (312) 583-2300 | |

May 10, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 10, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Kelly E. Farnan, Esquire<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Todd A. Noah, Esquire<br>DERGOSITS & NOAH LLP<br>One Embarcadero, Suite 720<br>San Francisco, CA  94111<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| John S. Ferrell, Esquire<br>Robert J. Yorio, Esquire<br>CARR & FERRELL LLP<br>120 Constitution Drive<br>Menlo Park, CA  94025<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Kevin P.B. Johnson, Esquire<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, CA  94065<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Yury Kapgan, Esquire<br>Nima Hefazi, Esquire<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA  90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

Ron Hagiz, Esquire  
QUINN EMANUEL URQUHART & SULLIVAN, LLP  
51 Madison Avenue, 22nd floor  
New York, NY  10010  
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Dawn M. David, Esquire  
QUINN EMANUEL URQUHART & SULLIVAN, LLP  
2755 E. Cottonwood Parkway, Suite 430  
Salt Lake City, UT  84121  
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Gavin Snyder, Esquire  
QUINN EMANUEL URQUHART & SULLIVAN, LLP  
1109 First Avenue, Suite 210  
Seattle, WA  98101  
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

*/s/ Brian P. Egan*

Brian P. Egan (#6227)

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 17, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Kelly E. Farnan, Esquire<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Todd A. Noah, Esquire<br>DERGOSITS & NOAH LLP<br>One Embarcadero, Suite 720<br>San Francisco, CA 94111<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| John S. Ferrell, Esquire<br>Robert J. Yorio, Esquire<br>CARR & FERRELL LLP<br>120 Constitution Drive<br>Menlo Park, CA 94025<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Kevin P.B. Johnson, Esquire<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, CA 94065<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Yury Kapgan, Esquire<br>Nima Hefazi, Esquire<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

Ron Hagiz, Esquire VIA ELECTRONIC MAIL
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd floor
New York, NY  10010
*Attorneys for Defendant*

Dawn M. David, Esquire VIA ELECTRONIC MAIL
QUINN EMANUEL URQUHART & SULLIVAN, LLP
2755 E. Cottonwood Parkway, Suite 430
Salt Lake City, UT  84121
*Attorneys for Defendant*

Gavin Snyder, Esquire VIA ELECTRONIC MAIL
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA  98101
*Attorneys for Defendant*

*/s/ Brian P. Egan*

Brian P. Egan (#6227)

2